**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

In re:

NOREEN A. BODDY,

Debtor.

Bankruptcy Case No. 18-10250 TBM
Chapter 7

---

**OPINION AND ORDER DENYING MOTIONS TO AVOID JUDICIAL LIENS OF GE MONEY BANK AND LVNV FUNDING**

---

This is another case involving the uncertain intersection between bankruptcy law and probate law, this time involving an effort to avoid judgment liens which impair the deceased debtor's homestead exemption. The homestead exemption is one of the most fundamental protections from creditors afforded to debtors. It has its roots in England at common law and it, along with other exemptions, serves both "beneficent sociological and economic purposes." *In the Matter of Dodge*, 685 P.2d 260, 263 (Colo. App. 1984) (citing *Bauldry v. Hall*, 174 F.2d 379 (8th Cir. 1949)).

> The primary purpose of such an exemption is to secure to the householder a home for himself and his family, regardless of the solvency or insolvency of the family; to protect the citizen householder and his family from the dangers and miseries of destitution consequent on business reverses or upon calamities from other causes; to secure the permanent habitation of the family; to cultivate the interest, pride, and affection of the individual, so essential to the stability of government. It has long been the policy of this state (Colorado) to preserve the home to the family, even at the sacrifice of just demands, for the reason that the preservation of the home is deemed of paramount importance.

*Id.* (Internal citations omitted).

The Bankruptcy Code[1] also recognizes and preserves for the debtor and the debtor's "dependents" the sociologic and economic benefits served by exemptions. 11 U.S.C. § 522. Property exempted under Section 522 "is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case . . . except a debt secured by a lien that is not avoided under" Section 522(f) or the other avoidance sections of the Code. 11 U.S.C. § 522(c)(2). For debtors in states which have not opted out of the Federal exemption scheme, Congress permits debtors to exempt real

---

[1] The United States Bankruptcy Code is codified at 11 U.S.C. §§ 101, *et. seq.* Hereinafter, unless otherwise indicated, all references to "Section" are to Sections of the Bankruptcy Code.

property that "the debtor or a dependent of the debtor uses as a residence." 11 U.S.C. § 522(d)(1). Moreover, if a debtor fails to timely claim an exemption, "a dependent of the debtor" may do so within 30 days after the deadline expires for the debtor to do so. 11 U.S.C. § 522(l); Fed. R. Bankr. P. 4003(a). Section 522(a)(1) does not define "dependent" except to say "'dependent' includes spouse whether or not actually dependent."

In the event of the death of the "householder," to whom does that protection extend? The Colorado legislature has limited the exemption's reach to "a widow, or husband, or minor children. In case there is neither widow, husband, nor minor children, the homestead shall be liable for the debts of the deceased." C.R.S. § 38-41-204.

The Bankruptcy Code does not address what effect the debtor's death has on any aspect of a bankruptcy case. *In re Waring*, 555 B.R. 754, 759 (Bankr. D. Colo. 2016). This Court observed in *Waring* that:

> [t]he Bankruptcy Code contains 264 Sections and literally thousands of subsections, some well-known and many obscure, that form the backbone of modern bankruptcy law. It is a long read. But one would read for many hours in vain if trying to locate the provision expressly governing the death of a debtor after commencement of a bankruptcy case. The reason is that the Bankruptcy Code actually contains no specific statute on the topic of a debtor's death.

*Id.*

In the case before this Court, the Debtor properly claimed a homestead exemption. However, she passed away before her Chapter 7 case, a "no asset" case, was closed. Thus, if Ms. Irwin had not filed her motions to avoid the judicial liens, the case would have been closed and the real property would have been abandoned to the Debtor pursuant to Section 554(c).[2] Instead, Ms. Irwin as the Debtor's "next-of-kin," moved to compel the Trustee to abandon the real property so she could sell it.

At the same time, Ms. Irwin filed her motions seeking to avoid the judicial liens of two judgment creditors against the real property to be sold. She as "next-of-kin" and Personal Representative of the Debtor's Probate Estate (the "PR"), not the Debtor, hopes to avail herself of the protections Congress granted to debtors in Section 522(f) of the Bankruptcy Code.[3] She seeks to stand in the shoes of the Debtor, effectively to be substituted for the Debtor, in a contested matter which the Debtor had not commenced before she passed away. She endeavors to maximize the Debtor's homestead exemption for her benefit when she would not be afforded that right under Colorado Probate Law. As a policy matter, if this Court were to grant the request of the Debtor's

---

[2] Alternatively, if the case was an "asset" case and the trustee liquidated the real property for the benefit of creditors, the trustee would pay the Debtor (or her Probate Estate) her homestead exemption.
[3] Section 522(f) provides in pertinent part: "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled. . . if such lien is a judicial lien."

2

"next-of-kin," her entitlement to a homestead exemption, if any, would be elevated over the Debtor's creditors which hold liens on that residential real property. This Court cannot interpret the Bankruptcy Code to effect such a result. The Court afforded Ms. Irwin the opportunity to submit legal authority which analyzes and construes the language of Section 522(f), particularly whether someone other than the "debtor" is permitted to bring a motion under that section. Despite that opportunity, Ms. Irwin has failed to provide persuasive legal authority to justify the Court interpreting the statute to have a meaning other than its plain language.

## I.  Procedural Posture and Matters Pending Before the Court.

### A.  The Documents Filed and the Court's Order.

The issue presented comes to the Court in the context of two motions to avoid judicial liens against the residential real property of the Debtor filed by the "Estate of Noreen A. Boddy" (the "Probate Estate"). On May 3, 2018, the Probate Estate filed a "Motion to Avoid Judicial Lien" of GE Money Bank (Docket No. 31, the "GE Money Bank Motion") and the "Motion to Avoid Judicial Lien" of LVNV Funding (Docket No. 34, the "LVNV Motion") (collectively, the "Motions"). In the Motions, the Probate Estate sought to avoid the judicial liens held by GE Money Bank and LVNV Funding, respectively, in real property "of Estate of Debtor" located at 2508 29th Avenue, Greeley, CO 80634 (the "Property").

The Court reviewed the Motions and, for various reasons more fully stated therein, issued its "Order on Motions to Avoid Judicial Liens of GE Money Bank and LVNV Funding" (Docket No. 47, the "Order"). The most pressing concern which this Court expressed in the Order and the question the Court directed to the Probate Estate was whether the Probate Estate was statutorily permitted to bring a motion to avoid a judicial lien pursuant to 11 U.S.C. § 522(f).

On June 18, 2018, purportedly the Debtor, Noreen A. Boddy (the "Debtor"), by and through "*the* undersigned" counsel, Stephen E. Berken ("Counsel") filed a "Response to Order on Motions to Avoid Judicial Liens of GE Money Bank and LVNV Funding" (Docket No. 51,[4] the "Response to Order"). In his Response to Order, Counsel discloses he was retained by "Debtor's next-of-kin (Linda M. Irwin)" ("Ms. Irwin").[5] Ms. Irwin represents in the Response to Order that she is the "Personal Representative of the Estate of Noreen A. Boddy," having been appointed on May 4, 2018, by the Denver County District Court in Case No. 2018 PR 30287.

### B.  Ms. Irwin's Legal Position and Supporting Authorities.

In her Response to Order, Ms. Irwin relies heavily on cases involving a Chapter 13 debtor who dies post-confirmation and, in which, a surviving spouse or debtor's children request entry of a "hardship discharge" under Section 1328(b). *In re Kosinski*, 2015 WL

---

[4]  Throughout this Opinion and Order this Court will use the convention "Docket No.___" to refer to the docket number of the document in the electronic file for this case.
[5]  When he filed the Motions, Counsel signed them purportedly on behalf of the Probate Estate. However, he failed to identify who acted on behalf of the Probate Estate to retain and direct him.

3

1177691 (Bankr. N.D. Ill. 2015); *In re Hoover*, 2015 WL 1407241 (Bankr. N.D. Cal. Mar. 24, 2015); *In re Inyard*, 532 B.R. 364 (Bankr. D. Kan. 2015); *In re Lizzi*, Case No. 09-10097-1-rel, Docket No. 107 (Bankr. N.D.N.Y. Jan. 12, 2016) reconsidering *In re Lizzi*, Docket No. 97 Bankr. N.D.N.Y. May 7, 2015) (unreported decisions).

Ms. Irwin intimates that she need not be "substituted" for the Debtor, noting cases that observe that Fed. R. Bankr. P. 1016 provides no mechanism for substituting someone in the debtor's place "with regard to normal administration of the case." *Inyard*, 532 B.R. at 367. Ms. Irwin argues that the language of Fed. R. Bankr. P. 1016 is "plain" and

> does not contemplate much effort, if any, on behalf of a debtor after her death . . . Likewise, the Rule's provision ". . . the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred" requires no cooperation of the debtor, or trustee, in the context of avoiding a lien.

Response to Order, at 7. This Court understands Ms. Irwin's contention to be: Fed. R. Bankr. P. 1016 is unequivocal as to what happens in a liquidation case upon the death of the debtor — the case is not abated. There is a trustee appointed to conclude administration of a Chapter 7 case and the debtor's cooperation is not needed. Because the Debtor's cooperation is not needed to prosecute these Motions to Avoid Liens, Ms. Irwin asserts, the prosecution of the motions may proceed even though the Debtor is deceased.

The logic of Ms. Irwin's argument escapes the Court. But what does not escape the Court is that Ms. Irwin never satisfactorily addresses the question posed to her by the Court. Does Section 522(f) permit a non-debtor to bring a motion to avoid a judgment lien in a Chapter 7 case when the statute is explicit that the "*debtor* may avoid the fixing of a lien of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled." On what basis may Ms. Irwin bring these contested matters, which the Debtor herself had not commenced before she died, matters not involving the administration of the estate?[6]

---

[6] Ms. Irwin cites *In re Walters*, 113 B.R. 602 (Bankr. D.S.D. 1990) as an example of a case in which the court permitted the deceased debtor's widow and the executrix of his probate estate to reopen the debtor's Chapter 11 case to avoid liens against certain real estate. While the facts of the case are not entirely certain, the Court has gleaned that the *Walters* case involved the following facts: the debtor died two years after confirmation of his Chapter 11 plan and after his Chapter 11 case was closed; the liens which clouded the real estate were tax liens owed by a third party; the real estate was not homestead property; and just over two years post-confirmation, while the case was still closed, and several weeks before his death, the debtor commenced an adversary proceeding to avoid the tax liens.
    The Internal Revenue Service (the "IRS") which held a tax lien which encumbered the real property opposed reopening the case arguing that a deceased debtor's probate estate was not a "person" and could not file bankruptcy. The *Walters*' court rejected that argument finding that the widow was seeking to reopen a closed case under Section 350. *Id.* at 606 ("Reopening the case cannot hinge solely on whether or not the debtor now meets the Bankruptcy Code's narrow definition of a debtor.") The *Walters*' court engrafted the language of Fed. R. Bankr. P. 1016 regarding the impact the death of a debtor has in a reorganization case onto Section 350. Reopening was appropriate "to accord relief where it is possible and in the best interest of the parties." *Id.* at 605.

## II.  Jurisdiction and Venue.

This Court's jurisdiction to enter final judgment on the issues presented in this case pursuant to 28 U.S.C. § 1334 is in doubt.  If the Debtor was before the Court, it would be clear that the matters are core proceedings under 28 U.S.C. § 157(b)(2)(B) (matters concerning exemptions from property of the estate) and (b)(2)(O) (other proceedings affecting the debtor-creditor relationship).  Given that Ms. Irwin has sought to avail herself of the provisions of the Bankruptcy Code and purports to stand in the shoes of the Debtor, the Court has jurisdiction to enter final judgment.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.  Factual Background.

The record in this case is the source of the facts which form the basis for this Opinion and Order and are undisputed.  Debtor filed this Chapter 7 case on January 14, 2018.  She attested that she resided at the Property, included it as a wholly owned asset on her Schedule A/B, and claimed a homestead exemption in the Property in the amount of $92,710.24 under C.R.S. § 38-41-201(1)(b). (Docket No. 1, 2, 17 and 23.)  She further attested that she was not married, had no dependents and no codebtors. (*Id.*, 8, 31 and 34.)   At the time she filed her case, the Debtor was represented by an attorney, James L. Leerssen.

A Chapter 7 Trustee (the "Trustee") was appointed and the Section 341 Meeting of Creditors was set (Docket No. 13). The case was initially designated a "no asset" case. The Trustee never recovered nor liquidated any non-exempt assets so the case's status as a "no asset" case never changed. Thus, no deadline was set to file proofs of claim in the case.

On the day after the Debtor filed her case, she filed two motions to avoid judicial liens (Docket Nos. 10 and 11).  In one, the Debtor sought to avoid the judicial lien of Capitol One Bank (USA), N.A. ("Capitol One") against the Property.  In the other, she moved to avoid the judicial lien of Discover Bank ("Discover") against the Property.  Neither Capitol One nor Discover objected.  Thus, on February 8, 2018 the Court entered orders avoiding the judicial liens of Capitol One and Discover against the Property. (Docket Nos. 20 and 21.)  Debtor did not file any other motions to avoid judicial liens against the Property.

No objections were posed to the Debtor's claim of exemption in the Property and no objections to discharge or dischargeability of debts pursuant to 11 U.S.C. § 523(c) were filed by the April 10, 2018 deadline.  On February 10, 2018, the Debtor filed her

---

The Court observes that facts in *Walters* are entirely distinguishable from the facts of this case. That case was a Chapter 11 reorganization.  Unlike in a Chapter 7 liquidation case, Fed. R. Bankr. P. 1016 offers courts little guidance as to the impact the debtor's death has on the ongoing administration and conclusion of a reorganization case.  What is more notable is that the debtor himself had commenced the adversary case to avoid the tax liens before he died.  Because all that was before the court was a motion to reopen, Fed. R. Bankr. P. 7025 and Fed. R. Civ. P. 25(a) governing substitution of parties in an adversary proceeding or contested matter, did not need to be discussed or analyzed by the court.

Certificate of Debtor Education. (Docket No. 22.) On April 16, 2018, the Court entered the Debtor's discharge. (Docket No. 25, the "Discharge.")

In the interim, on February 12, 2018, the Chapter 7 Trustee made a docket text entry. In that docket text entry she indicated that: (1) she had neither received any property nor paid any money; (2) after diligent investigation there were no non-exempt assets available for distribution; and (3) the estate had been fully administered. (Docket text on Feb.12, 2018.)

On May 2, 2018, Ms. Irwin's counsel filed a Notice that the Debtor had died on March 31, 2018 (Docket No. 27, the "Notice"). Contemporaneously, Ms. Irwin filed three motions to avoid judicial liens. (Docket Nos. 28, 31, and 34.) Two of the motions are the pending GE Money Bank and LVNV Motions and the third was directed to Discover Bank (Docket No. 28). However, the judicial lien of Discover Bank against the Property was the subject of the Debtor's earlier motion and had been avoided. Thus, the Court issued a separate order disposing of that motion. (Docket No. 46.)

In the GE Money Bank Motion and the LVNV Motion, Ms. Irwin identifies herself only as the Debtor's "next-of-kin," not as niece, cousin, second cousin, daughter or otherwise. In the Response to Order she represents she was appointed as the Personal Representative (the "PR") of the Probate Estate after she filed her Motions. Nevertheless, the Court infers from that designation as "next-of-kin" and from the record in this case that Ms. Irwin is not a dependent, a surviving spouse, or a minor child of the Debtor.

Ms. Irwin is before this Court requesting pursuant to Section 522(f) to avoid the judicial liens against the Property. Ms. Irwin argues that the judicial liens of GE Money Bank and LVNV impair the Debtor's homestead exemption.

### IV.     Legal Discussion.

**A.     Section 522(f)**.

Section 522(f) permits the "debtor to avoid the fixing of a lien on an interest of the debtor in property to the extent such lien impairs an exemption to which the debtor would have been entitled. . .". Did Congress intentionally limit to relief accorded in Section 522(f) to motions brought by the "debtor?" Congress has made it clear that only a debtor may pursue certain relief provided by the Bankruptcy Code. For example, only the "debtor" who is a "person" as defined in Section 101(41) may file a case. 11 U.S.C. § 109(a). "The definition (of person in Section 101(41) does not include an estate or a trust, which are included only in the definition of 'entity' in proposed 11 U.S.C. 101(14)." H.R. Rep. No. 595, 95th Cong, 1st Sess 313 (1977); S. Rep. No. 989, 95th Cong, 2d Sess 25 (1978).

Courts have held that a deceased debtor's probate estate may not convert a Chapter 13 case to Chapter 7. *In re Spiser*, 232 B.R. 669, 673 (Bankr. N.D. Tex. 1999); *In re Jarrett*, 19 B.R. 413, 414 (Bankr. M.D.N.C. 1982); *see also In re Quint*, 2012 WL 2370095, at *2 (Bankr. D.S.C. June 22, 2012) (unreported) ("Although this Court has not

expressly addressed the issue of whether a Chapter 13 may be converted to a case under Chapter 7 following the death of a debtor, as a matter of law, it recognizes that other courts have held that conversion is impermissible. While the Court cannot ignore the absence of an objection to the Motion (to convert) . . . the record before the Court is insufficient at this time to support the Special Administrator's claim that conversion is permissible.).

Ms. Irwin has not cited a case, nor has the Court's own research located a case, which analyzes the language of Section 522(f) to determine whether such a motion may be brought by other than a debtor.[7] In the *Mobley* case referred to by Ms. Irwin in her Response to Order, the deceased debtor's daughter was appointed as "independent representative" of her father's probate estate. *In re Mobley*, 2004 WL 377679 (Bankr. C.D. Ill. Mar. 1, 2004). The daughter then filed a motion to reopen the bankruptcy case for the purpose of filing a motion under Section 522(f).

After holding a hearing on the daughter's motion to reopen the deceased debtor's case, notice of which was provided to the judgment lienholder, the court reopened the case. When the daughter filed the motion to avoid the judicial lien, the judgment lienholder appeared and challenged the daughter's standing to pursue the Section 522(f) avoidance motion. The *Mobley* court states that it determined the daughter had standing to both reopen the closed case and pursue the lien avoidance. *Id.* at *2-3. But the court's analysis as to her standing to bring the Section 522(f) motion is not memorialized in the opinion.

B. **Fed. R. Bankr. P. 4003(d): "Avoidance by Debtor of Transfers of Exempt Property."**

The applicable rule, Fed. R. Bankr. P. 4003(d), is titled "Avoidance by Debtor of Transfers of Exempt Property." The Rule provides:

> [a] proceeding under § 522(f) to avoid a lien or other transfer of property exempt under Code shall be commenced by motion in the manner provided by Rule 9014, or by serving a chapter 12 or chapter 13 plan on the affected creditors in the manner provided by Rule 7004 for service of a summons and complaint.

The rule is explicit that a motion to avoid a lien is a contested matter subject to the requirements of Fed. R. Bankr. P. 9014. If a debtor is seeking to avoid a lien other than

---

[7] In the case of *Ohanian v. Irwin (In re Irwin)*, 338 B.R. 839 (D. E.D.Cal. 2006), the deceased debtor's daughter brought motions to avoid judicial liens against the debtor's homestead and her capacity to do so was challenged. However, the court did not analyze the language of Section 522(f). Rather, the trial court having been presented with a motion to substitute parties, conducted an analysis under Fed. R. Civ. P. 25 and authorized the daughter to substitute as the party for her father. *Id.* at 848 ("In effect, (the daughter) as a substitute for her father, was the party that brought the lien avoidance motion ab initio.").

7

through a Chapter 12 or 13 plan, Fed. R. Bankr. P. 4003(d) requires that the proceeding "shall be commenced by motion in the manner provided by Rule 9014." [8]

Fed. R. Bankr. P. 9014(c) makes Fed. R. Bankr. P. 7025 applicable to contested matters, which, in turn, makes Fed. R. Civ. P. 25 applicable to contested matters. Fed. R. Civ. P. 25(a)(1) permits a court to order substitution of the "proper party" if a party dies during the course of litigation and "the claim is not extinguished." "A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed."

### C. Fed. R. Bankr. P. 1016.

Unlike the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (which supplement the Bankruptcy Code and sometimes fill in gaps) do contain some guidance on death during a bankruptcy case. Fed. R. Bankr. P. 1016 states in full:

> Death or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death or incompetency had not occurred. If a reorganization, family farmer's debt adjustment, or individual's debt adjustment case is pending under chapter 11, chapter 12, or chapter 13, the case may be dismissed; or if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.

Previously, this Court had occasion to construe Fed. R. Bankr. P. 1016 when dealing with the impact of the debtor's death on a liquidation proceeding:

> The first two sentences of Fed. R. Bankr. P. 1016 pertain to Chapter 7 liquidations and are fairly clear in application. The basic principle is that a Chapter 7 case should continue irrespective of the death of the debtor after the petition. This makes good sense because in the majority of Chapter 7 cases, the filing of the petition operates to create an estate consisting of "all legal and equitable interests of the debtor in

---

[8] Prior to the 2017 amendments to the Federal Rules of Bankruptcy Procedure, Fed. R. Bankr. P. 4003(d) read: "A proceeding by the debtor to avoid a lien or other transfer of property exempt under § 522(f) of the Code shall be by motion in accordance with Rule 9014." The Advisory Committee Note for 2017 informs that "Subdivision (d) is amended to provide that a request under § 522(f) to avoid a lien or other transfer of exempt property may be made by motion or by a chapter 12 or chapter 13 plan." Fed. R. Bankr. P. 4003(d) Advisory Committee Note (2017). It might be argued (although Ms. Irwin has not so argued) that the rewording in 2017 provides support for the proposition that someone other than the debtor may bring a motion to avoid a lien under Section 522(f). This Advisory Committee note, however, suggests that the change is purely stylistic to incorporate the ability of the debtor to seek avoidance under Section 522(f) both in a motion and in a Chapter 12 or 13 plan. Importantly, only a debtor may file a Chapter 12 or 13 plan.

> property," but subject to potential exemptions. 11 U.S.C. § 541 (property of the estate); 11 U.S.C. § 522 (exemptions). Then, a Chapter 7 trustee is appointed. 11 U.S.C. §§ 701-703. The main job of a Chapter 7 trustee is to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest." 11 U.S.C. § 704. If funds are available in a Chapter 7 liquidation, then such funds must be distributed in order of statutory priority. 11 U.S.C. § 726. In this process, the debtor generally plays no active role. In fact, unless the Chapter 7 estate is solvent, a debtor typically does not even have standing to participate in matters concerning administration of the bankruptcy estate. *Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.)*, 151 F.3d 605, 607 (7th Cir. 1998); *In re Morreale*, 2015 WL 3897796, at *7-8 (Bankr. D. Colo. Jun. 22, 2015). So, it only stands to reason that the death of a Chapter 7 debtor during the pendency of a bankruptcy case will not usually impede the liquidation process.

*Waring*, 555 B.R. at 760-61. But, the same rule offers courts dealing with the death of a debtor in a Chapter 13 reorganization little guidance:

> Chapter 13 is an altogether different process in which the debtor plays a central and ongoing role, from the filing of the petition through discharge some three to five years later. So, the last sentence of Fed. R. Bankr. P. 1016 (governing Chapter 13 cases) operates differently than the first two sentences of Fed. R. Bankr. P. 1016. In Chapter 13:
>
>> … *the case may be dismissed; or if further administration is possible and in the best interest of the parties, the case may proceed* and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.
>
> (emphasis added.) Thus, unlike a Chapter 7 liquidation, in a Chapter 13 debt adjustment case there are two options upon the death of the debtor: (1) the case may be dismissed; or (2) the case may proceed. And the case may proceed *only* if "further administration is possible" and continuing the case "is in the best interests of the parties."
>
> Given the structure of the Chapter 13 process, it should not be surprising that the normal default presumption upon death is dismissal. In fact, the Advisory Committee

9

> Note accompanying the text of Fed. R. Bankr. P. 1016 candidly states:
>
>> In a chapter 11 reorganization case or chapter 13 individual's debt adjustment case, *the likelihood is that the case will be dismissed.*
>
> Fed. R. Bankr. P. 1016 Advisory Committee Note (1983) (emphasis added). However, ultimately the decision is discretionary with the bankruptcy court. In making the determination, the bankruptcy court should consider whether "further administration is possible;" however, the meaning of that phrase is not spelled out either in the Bankruptcy Code or in the Federal Rules of Bankruptcy Procedure. In any event, if "further administration is possible," then it would be necessary to assess the "best interests of the parties."

*Id.* at 761.

Given that a Chapter 7 debtor is not needed for the "administration" and "conclusion" of Chapter 7 case, Fed. R. Bankr. P. 1016 can provide courts with definitive direction. For the same reason, it need not speak to substituting someone for the debtor.[9]

---

[9] The court in *In re Shepherd* provided an informative contrast between substitution of a debtor in a main bankruptcy proceeding and in litigation:

> [t]he absence of any mechanism to substitute someone or something else for a deceased debtor in bankruptcy proceedings makes sense when one considers the purposes of bankruptcy. One of them is to give debtors a "fresh start" so they can "enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" The other is paying creditors. After the debtor has died one does not need a bankruptcy proceeding to accomplish these goals. A debtor who has died has no need of a fresh start, and where paying creditors is concerned, that can be accomplished through state probate proceedings.
>
> If one considers why it may be necessary to substitute one entity for another in litigation and what the effect of substitution is, one can better understand why there is no mechanism for substituting a different entity for the debtor in a bankruptcy proceeding. In common parlance, the verb substitute means to replace or exchange. We are not talking about a stand-in for the original object . . . but a complete replacement of the original object . . . The same type of thing happens in litigation. When a plaintiff dies its cause of action against a defendant is no longer extinguished but passes to another, whether to its estate or its heirs. That successor becomes the new owner of the claim and is entitled to prosecute it in their own right, on their own behalf. . . Unlike a claim which can survive a plaintiff's death or even be sold by the plaintiff, the opportunity to seek bankruptcy and the discharge which results from it are personal to the debtor. Furthermore, a debtor's heirs do not become liable for the debtor's obligations simply because the debtor has died.

The case administration is carried on by the Chapter 7 trustee. Provided the prerequisites for the grant of a discharge have been met, the debtor may receive a discharge and the trustee performs the duties assigned to the trustee by statute.

In a Chapter 13, however, the debtor is critical to the "administration" and "conclusion" of a case. As a result, courts are called upon to exercise their discretion to determine the fate of a Chapter 13 case following the debtor's death. Because of that inherent distinction and the integral role a Chapter 13 debtor plays in the administration of the Chapter 13 case, the case law addressing the impact of a debtor's death on the viability of a Chapter 13 case, including the debtor's entitlement to a discharge or hardship discharge, both of which are tied intrinsically to the extent to which the debtor completed payments under the plan, is neither applicable nor useful in the context of a Chapter 7 case.

D. **The Interplay Between Section 522(f) and Fed. R. Bankr. P. 4003(d), 9014 and 9025 Compels the Conclusion that Ms. Irwin may not Prosecute the Motions**.

Section 522(f) permits the "debtor" to avoid a judicial lien which impairs exemptions to which the debtor would be entitled. Ms. Irwin has failed to provide the Court with persuasive legal authority to extend the relief afforded by that Section of the Bankruptcy Code to Ms. Irwin. Furthermore, the prosecution of such motions is dictated by Fed. R. Bankr. P. 4003(d) which requires that such motions be prosecuted in the manner prescribed by Fed. R. Bankr. P. 9014, making them contested matters. In a contested matter, Fed. R. Bankr. P. 7025 and Fed. R. Civ. P. 25 determines how and whether a successor may be substituted for a deceased debtor. Fed. R. Bankr. P. 1016 is simply not applicable.

Here, the Debtor had not filed the Motions before she died. With no action pending, Ms. Irwin cannot be "substituted" for a deceased "party."

This case is not a case in which a dependent of the debtor or a spouse or minor child is seeking to claim an exemption to which the debtor was entitled at the time the bankruptcy case was filed. The entitlement to do so in expressly provided for in both the Bankruptcy Code and Federal Rules of Bankruptcy Procedure. The Debtor here claimed her homestead exemption and that was preserved. The Trustee did not administer the Property and the Trustee will close the case as a "no asset" case in due course.

Moreover, the Debtor's entitlement to her discharge is not at issue. The Debtor received her discharge. The Discharge in this case "discharges (her) from all debts that

---

Consequently, after a debtor's death there is no one who owns or succeeds to the debtor's opportunity to obtain a bankruptcy discharge.

*In re Shepherd*, 490 B.R. 338, 340-41 (Bankr. N.D. Ind. 2013) (In denying both a motion to substitute and a motion to modify a confirmed plan filed by a personal representative of a deceased Chapter 13 debtor, the court in *Shepherd* reasoned: [s]ince a probate estate cannot file bankruptcy directly, it should not be permitted to do so indirectly by using a mechanism that does not exist. It cannot be substituted for the debtor . . . Since only the trustee, an unsecured creditor, or the debtor may seek to modify a confirmed plan, and the debtor's personal representative is none of these, the motion to modify will be DENIED as well.")

11

arose before the date of the order for relief under this chapter." 11 U.S.C. § 727(b). A discharge voids any judgment to the extent it is a determination of the personal liability of the debtor with respect to any debt discharged under Section 727. 11 U.S.C. § 524(a)(1).

The legislative history of Section 541 is instructive:

> Once the estate is created (on the filing of a petition in bankruptcy), no interests in property of the estate remain in the debtor. Consequently, if the debtor dies during the case, only property exempted from property of the estate . . . will be available to the representative of the debtor's probate estate. The bankruptcy proceeding will continue in rem with respect to property of the estate, and the discharge will apply in personam to relieve the debtor, and thus his probate representative, of liability for dischargeable debts.

H.R. Rep. No. 595, 95th Cong, 1st Sess 367-368(1977); S. Rep. No. 989, 95th Cong, 2d Sess 82-83 (1978).

The Debtor's probate estate of which Ms. Irwin is the personal representative succeeds to the Property and any other assets of the Debtor's estate which may be abandoned to it on closing of this case. The creditors of the Debtor's bankruptcy estate whose debts have been discharged as personal liabilities of the Debtor will not have claims against the probate estate. Those creditors include both GE Money Bank and LVNV Funding. However, to the extent both creditors hold liens against the Property which have not been avoided pursuant to Section 522(f), they retain their liens. 11 U.S.C. § 522(c)(2).

The result here is that the exempt amount of the Property when sold by Ms. Irwin, will be subject to the judgment liens of GE Money Bank and LVNV Funding. Such a result is consistent with Ms. Irwin's right to the exemption under Colorado Probate Law as "next-of-kin." As noted above, the Colorado legislature has limited the benefit of a homestead exemption to the debtor's surviving spouse and minor children. If the debtor leaves neither a surviving spouse nor minor children, the exemption is available to satisfy the debtor's creditors. C.R.S. § 38-41-204.

## V. Conclusion.

Ms. Irwin has failed to demonstrate that she is entitled to stand before this Court and avail herself of Section 522(f). The statute explicitly provides that the "debtor" may avoid the fixing of a lien against exempt property and she has submitted no legal authority to conclude otherwise.

Furthermore, Fed. R. Bankr. P. 1016 is not applicable to absolve her of a need to substitute for the Debtor. Because the Motions are contested matters, if the Debtor had filed these Motions prior to her death, Ms. Irwin *may* have been able to be substituted as a "party" under Fed. R. Civ. P. 25. But the Debtor had not done so.

   Finally, Colorado Probate Law, consistent with the sociological and economic policies served by the homestead exemption, limits the benefits of the homestead exemption to the surviving spouse or minor children. Thereafter, it is available to the decedent's creditors. Accordingly, the Court:

   ORDERS that Ms. Irwin's "Motion to Avoid Judicial Lien" of GE Money Bank (Docket No. 31 is DENIED; and

   FURTHER ORDERS that Ms. Irwin's "Motion to Avoid Judicial Lien" of LVNV Funding (Docket No. 34) is DENIED.

   DATED this 2nd day of November, 2018.

               BY THE COURT:

               *Thomas B. McNamara*
               Thomas B. McNamara,
               United States Bankruptcy Judge